Alright, our next case is Sweetapple v. Asset Enhancement, Inc. Alright, our next case is Sweetapple v. Asset Enhancement, Inc. And Mr. Broker, whenever you're ready, you may begin. Thank you. May it please the court, I'm Douglas Broker. Here on behalf of appellant Robert Sweetapple, both this and the firm of Sweetapple, Broker, and Barkas. This is an appeal of a dismissal from the district court and also three orders by the bankruptcy court. And this court has de novo review jurisdiction overall for orders. The court is familiar with the parties and the conduct alleged as set out in multiple cases, the most recent being DiMartini v. Town of Goldstream and Mr. Sweetapple. Prior case was Mr. O'Boyle and Asset Enhancement. The appellee herein is a 2016 case. And so I'm not going to belabor the scheme of requests for documents and churning of attorney's fees. The issue here arises from settlement agreement presented into between the Town of Goldstream and the different O'Boyle-related entities where most of the cases were dismissed and some of the cases were agreed to be submitted to the courts for a determination of attorney's fees based upon a consent final judgment in each of those cases. The case below in the state court in front of Judge Kastronakis was one of those cases. And in the fall of 2019, Judge Kastronakis took evidence over several days and then scheduled a closing argument. There were several motions that were made and the appeal was taken by Asset Enhancement and the closing argument was ultimately scheduled for May 28th of 2020. On May 27th, Asset Enhancement filed for protection under Chapter 11, Section 5 of the Bankruptcy Code and filed a suggestion of bankruptcy before the court. Judge Kastronakis conducted a telephone hearing with the attorneys and the Town of Goldstream, represented by a different counsel, Ms. O'Connor, submitted case law to the effect that the automatic stay did not apply to this proceeding because… You don't have a lot of time. Could you address the appellate jurisdiction ruling? Oh, sure. All right. So the mistake that was made in the district court was to find that there was no appellate jurisdiction because the appeal should have been taken on the January 28th finding of contempt for the later denial of motion in the hearing. This is erroneous. The court followed a line of cases from the U.S. Supreme Court that applies to statutory and contractual attorney's fees and it's completely different from sanctions attorney's fees. So in your brief, you lay out these kind of two different buckets of case law. The one which you just mentioned, the statutory and contract, where there's finality even though attorney's fees is left unresolved. Right. And sort of contempt where there's not finality. Right. So you resolve everything. Correct. Why is this more like a contempt proceeding than the first kind of proceeding? Because it was a contempt proceeding. It was a motion for contempt. It was a motion for declaration of violation of the automatic stay, right? Well, no. It was actually entitled as a motion for contempt. It was entitled amended motion for contempt for violation of the automatic stay and for sanctions. And so the contempt rose out of the violation of the automatic stay. So it's not a situation where there was a statute that was alleged to be violated and there's an attorney's fee provision in the statute. Isn't the automatic stay? Yeah, I agree with that. But isn't the automatic stay a statutory provision though? Absolutely. Okay. But it's not a statutory provision that says the prevailing party recovers attorney's fees. It's a statute that says that if it's violated, you may recover attorney's fee as damages. So here, the attorney's fees are the damages. There were no other damages that were asserted. Isn't that the same though? I mean, and how is that different than, let's say, an employment discrimination statute that says if you violate this employment discrimination statute, one of the things you have to pay to the plaintiff is attorney's fees. Here, this statute says if you violate the automatic stay, one of the things you have to pay to the person whose automatic stay was violated is attorney's fees. Why is that sort of way of looking at it wrong? Because the employment discrimination situation has a basis for damages. And so if you find liability and damages, the plaintiff has recovered, and that final judgment is final and appealable. Even if the court reserves jurisdiction to determine the attorney's fees at a later date, the plaintiff is obligated or the defendant is obligated to take an appeal from the final judgment. In this sanctions context, and it's clear among all sanctions cases out of the bankruptcy court, and this is a case that was under 105, not 362K, because it was a corporate party, not an individual. The sanctions are an element of damages. I'm sorry, isn't it really just a very simple answer that the automatic stay is a bankruptcy order, right? I mean, the bankruptcy court enters an automatic stay, right? It's effectively that the bankruptcy court, that the automatic order is, that the stay order is automatically effectively entered by the bankruptcy court, whether or not it's actually entered. Do you know what I'm saying? Yes. And so the violation is a violation of a court order, an effective court order. Isn't that what the difference is? Whereas in the employment context, when you're violating a statute, there's no court order that's already in place. Isn't that why this is a contempt proceeding? Yes, Your Honor, that's a much better answer. I'm glad you like it. Yes. All right. So I thought the, I mean, and maybe I'm wrong, I thought the automatic stay was statutory. I thought it existed whether a bankruptcy court enters an order or not. That once you file bankruptcy, the filing of the bankruptcy petition creates the automatic stay. Yes, but it's treated as though it's an order that everybody is supposed to follow. Yeah, everybody's supposed to follow the law all the time. So that's the standard then. All law is a court order. I guess I'm just saying, am I wrong about that? I thought my understanding of the automatic stay was that it did not require a court to do anything for the automatic stay to exist. So the automatic stay exists regardless of whether a bankruptcy court enters it or not. Am I right about that? I mean, you practice bankruptcy law, I think. I'm not a bankruptcy specialist. I've been doing bankruptcy law for a lot of decades, but it's my understanding that what you're saying is correct. It's not an order for relief. Let me ask it to you this way, though. I mean, if a party wants relief from the automatic stay, they have to ask that the stay – it's effectively treated like an order, is it not? I mean, the bankruptcy court can lift the automatic stay order with respect to – Sure. So if a creditor has an urgent need to go forward with their pending litigation and they want to go forward despite the fact that the debtor has filed for bankruptcy, it's incumbent on them to go forward and file a motion in the court for relief from essentially this order, this automatic stay. That wasn't the case here, though. This is a case where it was the debtor. What it says is that a petition filed under section yada, yada, yada of this title operates as a stay, right? So it's not a court order. It's just the filing of the petition has this legal effect, which prevents you from doing certain things, right? Well, the way I would read that is that the filing of the petition operates as an order for relief. Because as I remember the old days, it used to be you'd get an order of relief from the court immediately. But here the law has been codified that the filing of the petition operates as a stay, but you have to come into court and seek relief if you're a creditor. We were – or Gulfstream was the judgment debtor. Gulfstream had consented to this judgment being entered, and it was up to the trial court, the state court judge, to decide whether or not to assess fees and how much. So there wasn't an asset until the state court ruled. The state court had already conducted its evidentiary hearing and wanted to have a closing argument. So Mr. Sweetapple was ordered by the court to appear for closing argument, and all he did was give the closing argument in opposition to the argument that was presented on behalf of asset enhancement. But that's your merits argument. Right. And you have addressed the merits in your brief. And if we were to agree with you that we have jurisdiction, I would assume you would also agree that we could remand to the district court to address the merits in the first instance. You could, but you have de novo jurisdiction over the bankruptcy court, and if you want to just resolve all the issues because you have them in front of you, I would encourage you to do that. I've reserved most of my time for rebuttal, and if the court doesn't have additional questions, I'd prefer to go ahead and listen to the appellant's argument. Thank you. Thank you, Mr. Broker. We'll hear from Mr. Murphy. I'm pleased to court Gary Murphy on behalf of the appellee asset enhancement. And just going to your how it works in bankruptcy, the 363 is called the automatic stay. What does that mean? It automatically goes into effect on the filing of a bankruptcy petition. Obviously, the court, the particular bankruptcy judge assigned to the case is responsible for making sure it's not violated, but it does automatically go into effect on the filing of the petition. But doesn't it say that under the statute that it operates as a stay? Operates as a stay, right? A stay is generally considered like an injunction. I mean, it seems like this is a different kind of situation, regardless of whether the court is actually entering the order or it's effectively, you know. Yeah, the way bankruptcy is designed, the court doesn't have to enter an order saying the stay is in effect. It automatically goes into effect as a result of filing the bankruptcy petition. But I guess my question is, it's, you know, the statutory language says it operates as a stay. It doesn't say no one shall file litigation. It says that, you know, filing a bankruptcy operates as a stay, which means to me, like, maybe there's a difference between that and a statute which tells you don't do something. Well, it does. It also does spell out in detail what the other parties to the bankruptcy case are not allowed to do. They're not allowed to continue to try to enforce pre-petition claims against the estate because that's what the bankruptcy is designed to do. If you have a claim against the estate that arose pre-petition, you file a proof of claim and you haggle it out, whatever the claim is and get whatever distributions available. You also cannot attempt to take over or assert any type of authority over the debtor's property. And you can't pursue pre-petition claims in the guise of continuing litigation, even though if the debtor may have commenced the litigation. The fact is, if the debtor has an asset and you're arguing, the other side's arguing that the asset has no value because of the debtor's conduct and that conduct occurred pre-petition, that would be a violation of the estate. So, I mean, I think probably at one point you must have also viewed it as an order. I mean, a stay, even though it's, you're right, the court doesn't actually order it. It operates as a stay. Correct. It's effectively like an order. You must have viewed it that way because you moved for contempt, right? And you wouldn't move for contempt for somebody having violated the employment statute. I mean, that wouldn't make sense. You move for contempt of a court order. Correct. And instead of calling it like a generic order, the way I think most practitioners and courts would look at bankruptcy courts as an injunction. It's an automatic injunction that prohibits parties from doing certain things. And that's why you sought contempt, right? Correct. Okay. I will tell you, I'm not sure that our law on contempt with respect to when something becomes final is correct after Budenich and the Ray Hockle gravel case. I'm not sure it's correct. You know, I know those didn't deal with contempt. But the reasoning behind them seems to apply equally here. And yet we're bound by them if this is considered contempt. It seems to me. So I don't know if you want to address that. I wanted to give you an opportunity. I started looking at the case, and I really did want to thank the court for giving us a heads up on the Play Nation case because it wasn't in the briefs. And I did take some time to figure it out. And I would have to, with your honor, my biggest main issue with Play Nation is, and I'm not, I don't think any of the panelists are the decision maker in that case. But it does strike me as strange that we have these two Supreme Court cases that there may be a reason this court wishes to distinguish the Budenich case and the Haylock case from contempt orders. There may be a valid basis. I don't quite know what that valid basis is because the Play Nation court didn't even attempt to address and harmonize these cases. So I'm not quite sure how you have two controlling Supreme Court cases. Here's the only way I can think of how to harmonize these cases. I don't know that it helps you. On the one hand, you have cases where if there's an underlying right to something in the statute, and then attorney's fees sort of flows from that. Well, that's going to be filed before there's an assessment of attorney's fees. I think part of the rationale of that, frankly, is that that right continues on. You're going to have the right to attorney's fees all through appeal, too, if you win a discrimination case, for example. So there's that. And then there's Play Nation and other contempt cases that say for contempt, we really, really, really, really want finality. And so we want everything to be resolved, including the attorney's fees award. So if that's the – let's just assume for the sake of argument that that's the way to harmonize these cases, which side of the line does this fall on? Does it fall on the side of more like a contempt? Or does it fall on the side of more like you have a statutory right, some kind of statutory cause of action that you brought, and the attorney's fees is just sort of a thing that you get because you want that statutory cause of action? Well, if – obviously, I'm not a proponent of the Play Nation case. I would argue I think the trouble – and I think it's with other cases in this circuit. It's not just Play Nation. But the problem starts when for some reason, I'm not sure the almost myopic focus on treating contempt orders as somehow a subcategory of what really the issue is. The issue is set forth in 1291, the statute, that the court only has jurisdiction, and the verbiage is final decisions. So labeling something a contempt order doesn't take it outside of the two Supreme Court cases. Those cases focus on what is the order final for purposes of a final decision on 1291. That inquiry really should focus solely on what was the relief requested and what does the order resolve? Does it resolve the merits of what the relief requested was? And if the answer is yes, then it's a final decision. Okay. And whether there – Yeah, let's use that test then. Here, it seems like you didn't get the relief that – I mean, it seems like you didn't get the relief that you were asking for until you got the attorney's fees, that they were knocked down and final, right? I was personally involved. I'll tell you from – Well, yeah, not you. Yeah, no, but the attorney fees was never really the issue. The issue was – and I was involved in the initial call-up from the state court judge and being told by everybody that they can go forward with this hearing, it wouldn't be a violation of the state. I tried to convince them that any competent bankruptcy attorney, when faced with an issue, going forward with this litigation, will it violate the state? Stopping the track, go to the bankruptcy court and ask the bankruptcy court whether going forward would be a violation of the state. The 362 has a provision for comfort orders, so people don't run afoul of the case. So, really, the relief that was paramount, the real relief sought was we wanted to enforce the automatic stay for their violation of insisting on going forward at the hearing. So, you actually tried to wipe out our case, right? That was what you wanted to do, is we got to stop this state court case from going forward. That was the relief requested. And, really, what was happening – and I don't think they quite told – I don't think the town of Gulfstream and Mr. Sweet Apple quite told the judge Connachter what was going on. They had this – and I think the bankruptcy court found it – they were pushing this fraudulent scheme like asset enhancement and the parties, you know, the principals are all bad people and they, you know, they did schemes of inflated bills. All of that good stuff. And they were trying to use, quote, the debtor's fraudulent scheme to not only wipe out the attorney fee it was entitled to under the records request case, but actually get sanctions against the debtor. And that's clearly – it is and was and found to be a violation of the state. And the court, in its order, Judge Rossin entered a stay prohibiting them from bringing up the fraudulent scheme to affect the amount of awards. So, that was the relief we sought and that's the relief that was granted. The attorney fee provision or the attorney fees were always ancillary to the proceeding. I mean, how do we know that? I mean, you knew you were going to be awarded attorney's fees. The question was how much, right? I mean, and when the order came out that said how much, that was the order that your friends on the other side of the aisle are saying was the final order. You're saying the order that said you were getting fees was the order. Yeah, the order that enforced the stay saying that the town can no longer use their fraudulent scheme to wipe out the debtor's claim for attorney fees. That's an injunction, right? I mean, that's my point is the automatic stay and I just – it's conceptually difficult, I think. But, you know, the automatic stay is this prohibition on people doing things, but they don't often know whether they're allowed to do a specific thing or not. Yes. And then you go and you litigate and then the bankruptcy judge says, yeah, you are prohibited from doing this going forward for some time. Sometimes you have to get the property back or whatever. And then that is sort of an injunction enforcing the automatic stay, right? Yeah, correct. And I don't know if it's this positive, but all of the parties below considered the order finding a violation of the stay to be the final order. I mean, Mr. Sweetapple actually filed a motion for reconsideration of that, the original. He didn't wait until the attorney fees were awarded. He went within the time period of a motion for reconsideration from the date of the original order finding the violation. The town of Gulfstream joined in it with him. So if they really thought that this wasn't the final decision, they could have waited and done their motion for rehearing after the fee award, which came months later. And frankly, it's a classic case of the tail wagging the dog. My fees were very modest. We ended up agreeing on the fees. There was no basis to object to the fees and the fees have been paid. That was never the real dispute. And they're trying to bootstrap their failure to having timely filed a notice of appeal, bootstrap the fee issue, which wasn't an issue, into giving this court jurisdiction. I think the district court got it right. But if this panel disagrees, I do think some clarity distinguishing the two Supreme Court cases and finding out why contempt orders somehow are analyzed differently to determine whether their final decisions under 1291 would be helpful for everybody, including the district court. So we do have our Planation case. And we've talked about that. The Planation case is building upon an earlier case from this court, Combs v. Ryan's Coal Company, 785 F. 2nd 970. And that seems to be where some of the language was pulled into Planation. And in the Combs case, it says the key is whether the contempt penalties imposed are conditional or subject to modification. And the earlier order was merely interim and clearly conditioned on the submission of a substantial quantum of information at the second hearing before a final finding of civil contempt would be issued, if at all. And my question to you would be, because we're in the bankruptcy context here, and we weren't in Combs, and we weren't in Planation, and we weren't in our later case, U.S. Commodities Future Trading Commission v. Escobio, and because a violation of the stay, there was no question that a violation of the stay was a violation of the stay. It was not conditional. It was not subject to modification. It did not depend upon the amount of the sanctions to determine whether sanctions would be issued, if at all. Is that a distinction that you're proceeding under at all here? Or does Planation just resolve it? No. That's a very good question. I would argue that Combs should not have been cited for as much reliance as the Planation court gave it. I mean, the panel cited it, and they cited this language from it, the underlying findings of contempt, because the contempt penalties were subject to modification up until that time, that those types of contempt orders are not final. And, hey, we can understand that. And, really, Combs was talking about the purge contempt orders. You know, well, thou shall pay this money, or thou goes, you know, gets three hots and a cut, where you actually have an ability to get out and go free. But that isn't what was involved in Planation. So I am a bit confused why Planation relies on a case that makes a distinction between purge contempt orders, which was applicable in Combs, and non-purge orders, which they say are final and appellable. So you could read Combs as saying it doesn't really support Planation. And the other case cited by Planation is the Fort case. And the Fort case attempts to give us all of the great reasons for why you don't consider orders leaving out an award of attorney fees as final, because the multiplicity of litigation. You appeal the substantive order, and then you appeal the fees, but that's expressing what the Supreme Court addressed in its two opinions. They said, yes, we're aware of this, but they also cited Federal Rule, I think it's 56D, which allows you to, you can file your notice of appeal timely and then ask the court to stay it while you finish up the other thing. But, so there was ways to get around it, even an implication that there might be two appeals. But anyways, I think the ruling, the real basis of the ruling of the Supreme Court, which is binding on this court, is we are aware of the possible multiplicity of appeals. But our goal is a bright line rule that clearly defines when an order is final for purposes of appeal. That means more to us than if possibly it gives rise to two appeals. And I think that rationale applies to contempt orders. Let me ask one record question. So the request for attorney's fees, just because there's two pieces of litigation, was the request for attorney's fees specific to litigating the automatic stay case in the bankruptcy court? Or were you also asking for attorney's fees for litigating the underlying state court case? It was solely related to, and the court was, the bankruptcy court was firm on that. It was solely related to the fees for drafting, filing, and prosecuting the motion for violation of stay. All right. Thank you very much. Thank you. And Mr. Broker, you have six minutes. All right. First, the issue that's before the court today is an issue of a finding of contempt and sanctions. And the sanctions are attorney's fees. So attorney's fees are damages. The PlayNation case made it clear that the order was not final until the amount of attorney's fees and costs awarded as part of the contempt order were set out. That's in the following paragraph after the paragraph citing the Combs case. And so that seems to be a pretty clear statement that in a contempt environment, attorney's fees are a necessary component of the order before it can be considered final. And as far as harmonizing is concerned, the way we wrote it up in our brief at pages 14 to 17 was that when a pending request for fees is collateral to the party's claims, it does not affect the final and feelable nature of the underlying judgment on the merits. And those are the Supreme Court cases. But where the request for fees is the claim, which is what this is, and it is normal in contempt and sanctions, then it's not final. But how can this be – see, that's what's odd to me when you say the request for fees is the claim because they weren't requesting the attorney's fees, or at least they didn't get the attorney's fees for litigating – doing the litigation in the state court that they say they weren't supposed to do. They got one sort of a new injunction that says we've got to stop this state court litigation, and then they got attorney's fees just for litigating that, right? So that's what's odd. It just seems – that seems much more like a discrimination case or something where you get the attorney's fees for litigating the case that you won and not something else. Well, in a discrimination case, you'd have the discrimination. You'd litigate and prove the discrimination here. And just to play out the analogy, I mean here they proved the violation of the automatic stay. They got an injunction to prevent continuing litigation in the state court, and then they got attorney's fees just for that piece of litigation that they were doing. Right. And they did it by filing a motion for contempt. Yeah. Right. And so it's a contempt case. And the line of authority is clear, and I not only cite the court to the PlayStation – or the PlayNation case, which specifically says that, but also the Porto case, which was a bankruptcy case. In a contempt case though, I mean – and I just – maybe just playing devil's advocate. But I mean in a contempt case, you don't come into court and say, judge, all we want you to do is to tell them that what they're doing is wrong and then give us whatever attorney's fees we spend litigating this contempt motion. You usually say something like, they're violating your injunction. You need to sanction them. And you also need to give them – they need to pay $1,000 a day until they come to compliance with your order, right? Usually that's what you're trying to do. They requested additional sanctions and damages, and the court denied it. The court said, I agree with you. This conduct is in contempt. It's in violation of the automatic stay, and I'm going to award you your attorney's fees. And I'd also – But it said it wasn't malicious or something, right? I mean, that was why they – why Judge Russell decided not to award sanctions. Right. And I would point the court to the McAvey case that we rely on in our brief. PlayNation, I admit, does a better job in some respects. But in the McAvey case, the appellant had filed its notice of appeal from the finding of contempt and prior to the assessment of attorney's fees. And this court dismissed that case as premature. And so this court has been clear in multiple cases in the past that contempt cases are different from the line of cases from the Supreme Court that counsels are relying upon and that they have their own rules. And that is followed in many other circuits, as set forth in, I believe it's footnotes three and four of our brief. It's – that's just the rule for contempt cases. It's – the court – the appellate courts don't want to see appeals until it's all done for the contempt. And the damages are part of that. It's final when the court has determined the damages. And so here, the parties stipulate it to the damages with a specific reservation that Mr. Sweetapple can still appeal the sanctions. And he's appealing the sanctions. He's not appealing the amount. He's appealing the finding of sanctions. And so we ask this court to vacate all of the orders. Just a record sort of fact question. The bankruptcy court's order awarding sanctions and your agreement on the number of sanctions amount, you don't have any obligation to pay attorney's fees through the appellate process. Do you have some obligation? Are you somehow on the hook for attorney's fees through the – I don't believe we are. There's been no motion, no request, and I don't believe we are. So it's all closed. Right. This is all about a finding of sanctions against Mr. Sweetapple. Right. And saying that that was improper because there was no objection made that it was just reducing a claim. There was no objection made at the time. Nothing said to the state court judge. You shouldn't consider that. And the state court judges never rule. So sanctions were totally inappropriate, and it was proper to wait until the amount was set. And the last point would be – Well, I'm sorry to interrupt you, but if there are no other questions, are there other questions? Okay. Then I'm going to have to cut you off because you're over your time. No problem. Thank you for listening to us today. All right. Thank you, counsel.